IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JOANN BROWN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:16-CV-884-A |
| | § | |
| COLONIAL SAVINGS F.A., | § | |
| | § | |
| Defendant. | § | |

MAR 2 1 2017

By_____
Deputy

<u>MEMORANDUM OPINION</u>
and
<u>ORDER</u>

Came on for consideration the motion of defendant, Colonial
Savings F.A., to partially dismiss plaintiff's first amended
complaint ("complaint") for failure to state a claim upon which
relief can be granted.  Plaintiff, Joann Brown, filed a response
to which defendant replied.  Having considered the motion, the
response, the reply, the amended complaint, and applicable legal
authorities, the court concludes that defendant's motion should
be granted.

I.

<u>Plaintiff's Claims</u>

Plaintiff, a former employee of defendant, alleged that
defendant retaliated against her in violation of 12 U.S.C. § 5567
and 18 U.S.C. § 1514A after she alerted her supervisor and other
personnel of defendant to what she believed to be defendant's
untimely and backdated mailing of certain notice letters to

mortgage borrowers.   Plaintiff described defendant's alleged

retaliation against her in the following allegations:

COLONIAL'S RETALIATION AGAINST BROWN

70. Tim Neer and John Roden began mistreating Ms.
Brown after she complained about what she perceived to
be a fraudulent letter.

71. During regular meetings with Tim Neer, Mr.
Neer verbally abused Ms. Brown; he berated Ms. Brown
and told her she was a failure.

72. Despite being designated as an attendee to a
leadership training event, Colonial excluded Ms. Brown
as punishment for persisting to sound the alarm
regarding Colonial's practices.

73. Ms. Brown complained to Colonial about how Tim
Neer mistreated her. Colonial did not intervene.

74.  On multiple occasions, Ms. Brown complained
to Human Resources about Tim Neer's behavior and
actually labeled it retaliation for her complaints.

75. Despite John Roden being Ms. Brown's immediate
supervisor, Tim Neer, John Roden's superior, singled
Ms. Brown out and drafted her performance review.

76. Tim Neer's performance review of Ms. Brown was
critical of Ms. Brown's performance despite evidence to
the contrary that Ms. Brown satisfactorily performed
her job.

77. Tim Neer withheld this critical performance
review from Ms. Brown for several months.

78. Tim Neer would later backdate the performance
review as a means to falsify evidence to support
Colonial's legal defense.

79. Tim Neer ostracized Ms. Brown and at times
would act as if she did not exist.

> 80. Ms. Brown was presented with the negative performance review in March 26, 2015 despite the performance review purporting to be drafted *Sunday*, January [sic] 8, 2015.

> 81. Unlike prior years, Ms. Brown was not afforded the opportunity to counter-sign or rebut the negative performance review.

> 82. Contemporaneous with her annual performance review, Tim Neer presented Ms. Brown with a performance improvement plan on March 26, 2015.

> 83. The design of this improvement plan was such that it was vague and impossible for Ms. Brown to complete the plan satisfactorily.

Doc. 17 at 12-13, ¶¶ 70-83.[1]

In paragraphs 84-86 of her complaint, plaintiff describes the discrete events that occurred on July 1, 2015, that she alleged caused her to tender her resignation in lieu of termination on that date. She described the events that led to her resignation as follows:

### COLONIAL'S TERMINATION OF BROWN

> 84. On July 1, 2015, Tim Neer and John Roden met with Ms. Brown intending to terminate her employment.

> 85. Prepared to terminate Ms. Brown's employment, Tim Neer and John Roden had a severance package prepared and presented it to Ms. Brown.

---

[1]The "Doc. _" references are to the number of the item on the docket in this action.

86. Having foresight that termination was likely the meeting's purpose, Ms. Brown tendered her resignation in lieu of termination.

Doc. 17 at 13, ¶¶ 84-86.

II.

## Grounds of the Motion to Dismiss

Defendant moved to dismiss all violations alleged by plaintiff that are barred by limitations. Also, defendant moved to dismiss plaintiff's § 1514A claims in their entirety for failure to state a claim upon which relief can be granted, arguing that plaintiff's alleged whistleblowing is not covered by § 1514A.[2]

III.

## Applicable Legal Principles

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal

---

[2]The introduction of defendant's motion states that defendant seeks to fully dismiss plaintiff's § 5567 claim; however, the remainder of the motion suggests that defendant's request for complete dismissal applies only to plaintiff's § 1514A claims.

4

quotation marks and ellipsis omitted).  Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action.  Twombly, 550 U.S. at 555 & n.3.  Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to state a claim upon which relief can be granted, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible.  Iqbal, 556 U.S. at 678.  To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient.  Id.  In other words, where the facts pleaded do no more than permit the court to infer the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief.  Id. at 679.  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific

task that requires the reviewing court to draw on its judicial

experience and common sense." Id.

Further, when a successful affirmative defense such as

limitations is apparent on the face of the pleadings, dismissal

is appropriate on that ground.  Kansa Reinsurance Co. v. Cong.

Mortg. Corp. Of Texas, 20 F.3d 1362, 1366 (5th Cir. 1994).

IV.

Analysis

A.   Plaintiff's Retaliation Claims are Outside the Scope of
     § 1514A

The Sarbanes-Oxley Act of 2002 ("SOX"), of which 18 U.S.C.

§ 1514A is a part, provides, in relevant part:

> (a) Whistleblower Protection for Employees of Publicly
> Traded Companies.—No company with a class of
> securities registered under section 12 of the
> Securities Exchange Act of 1934 (15 U.S.C. 78*l*), or
> that is required to file reports under section 15(d) of
> the Securities Exchange Act of 1934 (15 U.S.C. 78*o*(d))
> . . . or any officer, employee, contractor,
> subcontractor, or agent of such company . . . may
> discharge, demote, suspend, threaten, harass, or in any
> other manner discriminate against an employee in the
> terms and conditions of employment because of any
> lawful act done by the employee—
>
> > (1) to provide information, cause information to
> > be provided, or otherwise assist in an
> > investigation regarding any conduct which the
> > employee reasonably believes constitutes a
> > violation of section 1341 [mail fraud], 1343 [wire
> > fraud], 1344 [bank fraud], or 1348 [securities or
> > commodities fraud], any rule or regulation of the
> > Securities and Exchange Commission, or any
> > provisions of Federal law relating to fraud

6

against shareholders, when the information or
assistance is provided to or the investigation is
conducted by [a federal agency, Congress, or
supervisor] . . . .

18 U.S.C. § 1514A(a)(1).

In the plurality opinion of the Supreme Court in Lawson v.
FMR LLC, the Supreme Court held that the whistleblower protection
of § 1514A extends to employees of contractors and
subcontractors. 134 S. Ct. 1158, 1176 (2014). The Supreme Court
explained that in enacting § 1514A, Congress had in mind warding
off another Enron debacle, and was focusing on the role of
Enron's outside contractors in facilitating the fraud as it was
on the actions of Enron's own officers. Id. at 1169. The Court
made clear that FMR's alleged fraud directly implicated the
public companys' (mutual funds') shareholders. Id. at 1173. The
Court said that if the allegations of the plaintiffs were to
prove true, the "plaintiffs would indeed be 'firsthand witnesses
to [the shareholder] fraud' Congress anticipated § 1514A could
protect." Id.

The Court noted that the plaintiff's allegations fell
"squarely within Congress' aim in enacting § 1514A," id.,
inasmuch as the allegations of the complaint were of fraud that
"directly implicates the funds' shareholders," id. The plurality
was of the view that it did not need to determine "the bounds of

7

§ 1514A . . . , because plaintiffs seek only a 'mainstream application' of the provision's protection." Id.

A fair reading of the plurality opinion in Lawson is that an employee of a contractor for a public company that becomes aware that a fraud is being perpetrated that is detrimental to the interests of the shareholders of the public company has the whistleblower protection afforded by § 1514A.

The limits of the Supreme Court's Lawson decision were considered in Gibney v. Evolution Mktg. Research, LLC, 25 F. Supp. 3d 741 (E.D. Pa. 2014). In Gibney, a former employee of a contractor for a public company brought suit based on § 1514A against his former employer for being terminated after reporting to management his belief that an approved billing plan would result in fraudulent billing to the employer's client, the public company. Id. at 742. The Gibney court dismissed the complaint, holding that Lawson and SOX were not intended to extend whistleblower protection to such circumstances. The court noted that "the overarching goal of SOX is to prevent fraud against a public company's shareholders." Id. at 747. The court reasoned, however, that, although the alleged fraud of Evolution indirectly affected the public company's shareholders, "[n]othing in the text of § 1514A or the Lawson decision suggests that SOX was intended to encompass every situation in which any party takes an

8

action that has some attenuated, negative effect on the revenue
of a publicly-traded company, and by extension decreases the
value of a shareholder's investment." Id. at 748. Further, the
Gibney court noted that the fraud did not occur "by the public
company itself or through its contractors," id. at 474 (emphasis
omitted), but rather that the fraud was committed against the
public company, a scenario not covered by SOX, see id. at 747-48.
The court explained that "the specific shareholder fraud
contemplated by SOX is that in which a public company -- either
acting on its own or acting through its contractors -- makes
material misrepresentations about its financial picture in order
to deceive its shareholders." Id. at 748.

     Plaintiff has not alleged facts that would bring any of her
claims within the coverage of § 1514A. She alleged that
defendant, a contractor that services mortgages on behalf of
public companies, unlawfully retaliated against her after she
alerted her supervisor and other personnel of defendant to what
she believed to be the untimely and backdated mailing of certain
notice letters to mortgage borrowers. The mailings allegedly
"caused some mortgage borrowers to incur overdraft fees and
negative balances on consumer checking accounts." Doc. 17 at
¶ 49. Plaintiff alleged that the mailing was evidence of
defendant's "systemic underreporting of fraud and consumer

protection violations" that plaintiff failed to disclose to the public companies for which defendant serviced mortgages. Id. at ¶ 132. Defendant's nondisclosure, plaintiff asserted, caused those public companies to materially misstate their financial statements, which in turn harmed shareholders of the public companies who purchased or sold securities in reliance on such financial statements. See id. at ¶¶ 133, 135. Plaintiff alleged that defendant's actions constituted fraud on the "investors, banks, and government entities" (i.e., public companies and their shareholders) for which defendant serviced mortgages that brought her conduct within the scope of SOX. Id. at ¶ 134.

The court concludes that plaintiff's theory that her conduct falls within the scope of protected whistleblower activity envisioned by SOX is without merit. Plaintiff's allegations of fraud are too far removed from potentially harming the shareholders of a public company to be covered under § 1514A. See Plutzer v. United Servs. Auto. Ass'n, 2015-SOX-00007, at 12 (Dep't of Labor March 24, 2015); Doc. 23 at App. 030, 041 (holding that SOX did not extend whistleblower protection to activities that are "two or three steps removed from potentially affecting a shareholder's investment").

Expanding whistleblower protection as plaintiff requests would transform SOX into a general anti-retaliation statute,

10

which it is not.  See Safarian v. Am. DG Energy Inc., No. 10-
6082, 2014 WL 1744989, at *5 (D.N.J. Apr. 29, 2014), aff'd in
part and vacated in part, 622 F. App'x 149 (3rd Cir. 2015)
("[A]pplying the Sarbanes-Oxley Act to any fraudulent actions
that might lead to misstatements in the accounting records or tax
submissions would unduly expand the Act to a general anti-
retaliation statute").

Plaintiff has not alleged facts that support a claim that
she engaged in protected whistleblower activity under SOX.  As a
result, all her claims based on § 1514A are to be dismissed.

B.   The Limitations Ground

Section 5567 requires that a person file a retaliation
complaint with the Secretary of Labor "not later than 180 days
after the date on which [the] alleged violation occurs."
12 U.S.C. § 5567(c)(1)(A).[3]  A violation occurs "when the
plaintiff learns of the 'actual injury,' i.e., an adverse
employment action, and not when the plaintiff suspects a 'legal

---

[3]Section 1514(b)(2)(D) authorizes the filing of a retaliation complaint with the Secretary of Labor "not later than 180 days after the date on which the violation occurs, or after the date on which the employee became aware of the violation." As the court notes under the immediately preceding subheading, plaintiff has failed to allege facts that would state a retaliation claim under § 1514A even if an alleged violation had not been time-barred. If plaintiff had alleged facts that would state a retaliation claim under § 1514A, the limitations bars applicable to plaintiff's § 5567(c)(1)(A) retaliation claims would be equally applicable to plaintiff's § 1514A retaliation claims, and provide an alternative reason why those time-barred claims should be dismissed. Other than the events that occurred on July 1, 2015, plaintiff has not alleged any retaliatory violation of which, as a matter of law, she would not have become aware before June 26, 2015.

wrong,' i.e., that the employer acted with a discriminatory intent." Coppinger-Martin v. Solis, 627 F.3d 745, 749 (9th Cir. 2010); see Merrill v. S. Methodist Univ., 806 F.2d 600, 605 (5th Cir. 1986) (explaining when a claim accrues in a Title VII action). Only violations that occurred within 180 days of filing the complaint with the Secretary of Labor are actionable; all prior violations are time-barred. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114-15 (2002); Skaggs v. Van Alstyne Indep. Sch. Dist., No. 4:16-CV-00227-CAN, 2017 WL 77825, at *6 (E.D. Tex. Jan. 9, 2017) (observing that "the continuing violation doctrine does not apply to discrimination and/or retaliation claims").

The complaint has conflicting dates as to when plaintiff filed a complaint with the Secretary of Labor. Compare Doc. 18 at App. 022 (stating that the complaint was filed "on January 4, 2016") with id. at App. 104 (stating that the complaint was filed "[o]n or about December 23, 2015"). Giving plaintiff the benefit of the most favorable date, the court, in ruling on the motion to dismiss, considers that the complaint was filed on or about December 23, 2015. Thus, the only violations plaintiff alleged in her complaint that would not be barred by limitations were those that occurred on or after June 26, 2015. The only alleged violation that occurred on or after that date was whatever

12

occurred on July 1, 2015, to cause plaintiff to tender her resignation. Doc. 17 at 13, ¶¶ 84-86. A close reading of the facts alleged in the complaint and those stated in the appendix to the complaint confirms that everything else plaintiff contends was an alleged retaliatory violation occurred before June 26, 2015.[4] Id. at 12-13, ¶¶ 70-83; Doc. 18 at App. 026-031.

Therefore, the events that occurred on July 1, 2015, that plaintiff contends caused her to tender her resignation in lieu of termination, Doc. 17 at 13, ¶¶ 84-86, are the only alleged "violations" that survive the motion to partially dismiss.

V.

### The Court is Not Authorizing Plaintiff to File Yet Another Amended Complaint

This action was commenced by plaintiff by the filing of a complaint on September 22, 2016. Doc. 1. On December 22, 2016, defendant filed a motion to dismiss, and supporting brief, in which the defendant asserted, inter alia, essentially the same grounds that it asserted in the motion to partially dismiss plaintiff's first amended complaint that the court is now considering. Doc. 11. After having considered the grounds of the December 22, 2016 motion to dismiss, the court, by an order

---

[4]The appendix to the complaint mentions an event that occurred on June 29, 2015, and another that occurred on June 30, 2015. Doc. 18 at App. 032. However, plaintiff's complaint does not contain an allegation that anything that occurred on either of those dates was a retaliatory violation.

13

signed January 23, 2017, informed plaintiff of the court's
conclusion that the allegations of the complaint were
insufficient to state any claim upon which relief could be
granted.  Doc. 15 at 1.  After dismissing two of plaintiff's
claims, the court gave plaintiff an opportunity to file an
amended compliant as to her claims that defendant retaliated
against her in violation of § 12 U.S.C. 5567 and 18 U.S.C. §
1514A.

     Plaintiff filed her first amended complaint and its related
appendix on February 3, 2017.  Nothing in the amended complaint
and appendix suggests that there are facts that plaintiff could
plead in a second amended complaint that would cure the pleading
deficiencies as to her § 1514A claims or her time-barred
retaliation claims.

     Not only did plaintiff fail in her amended complaint to cure
her pleading deficiencies, she made no attempt upon receipt of
defendant's motion to partially dismiss to seek in a proper way
leave to file yet another amended complaint.

     Plaintiff's passing references in her response to the motion
to partially dismiss of her contingent desire to file another
amended complaint are not in compliance with the Local Civil
Rules of this court.  Plaintiff did not comply with Local Civil
Rule LR 5.1, which requires that "[a]ny document must clearly

                              14

identify each included . . . motion . . . ."  Moreover, if leave is sought to amend a pleading, the Local Civil Rules require that the movant attach a copy of the proposed amended pleading as an exhibit to the motion, and submit with the motion the original and a copy of the proposed pleading.  LR 5.1.  Apparently plaintiff was not serious enough about filing another amended complaint to go to the trouble to comply with the Local Civil Rules.  She has done nothing to demonstrate that the filing by her of an amended complaint would be productive.

VI.

Order

Therefore,

The court ORDERS that all of plaintiff's claims based on claimed retaliatory violations other than those alleged by her in paragraphs 84-86 of the complaint be, and are hereby, dismissed.

The court further ORDERS that all of plaintiff's claims against defendant for allegedly violating 18 U.S.C. § 1514A be, and are hereby, dismissed.

SIGNED March 21, 2017.

JOHN McBRYDE
United States District Judge

15